UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| PAUL J. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:10-CV-017-BG |
| ) | ECF |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Paul J. Brown filed this suit, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision denying Brown's application for Disability Insurance Benefits ("DIB"). The court has considered the administrative record, the arguments of the parties, and the applicable law and recommends that the district court affirm the Commissioner's decision and dismiss the complaint.

**I.      Statement of the Case**

   A.    *Application History*

Brown worked as a service technician for a natural gas company for twenty years. (Tr. 370). He claims he quit working in 1995 because he suffered from various conditions, including osteoarthritis, degenerative joint disease, carpal tunnel syndrome, and problems with his eyes. (Tr. 72, 906). He filed an application for DIB in 1995 and the Commissioner denied the application in 1998. (Tr. 707). Brown filed a second application in April 1999 and a third application for benefits in December 2000. *Id.* The Commissioner denied the second application in December 2002, and this court affirmed the Commissioner's denial of benefits in September 2005 in *Brown v. Barnhart* (Civ. No. 5:04-CV-245).

The third application is at issue in this case, and this is the second time Brown has appealed the Commissioner's denial of his third application. In the first appeal, *Brown v. Astrue* (5:09-CV-073), the court remanded the case for further administrative proceedings because the ALJ did not attempt to resolve a conflict between the vocational expert's testimony and information in the Dictionary of Occupational Titles ("DOT") and because the ALJ failed to properly consider physician opinion. (Tr. 721- 30). Judgment ordering the remand was entered on February 20, 2009. (Tr. 721). On remand, the ALJ held a hearing and determined on October 14, 2009, as the two ALJs before him had determined, that Brown was not disabled. (Tr. 707-19). The Appeals Council denied Brown's request for review, and Brown filed the instant appeal. The ALJ's decision is therefore the Commissioner's final decision for purposes of judicial review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

B. *The ALJ's Decision*

The ALJ determined that the relevant time period in this case is the period between October 21, 2000, the date on which Brown alleged his disability began, and December 31, 2001, the date on which Brown was last insured under Title II of the Social Security Act.[1] (Tr. 708). Brown does not dispute this fact. The ALJ further determined, at the fifth step of the sequential disability evaluation process,[2] that Brown was not disabled during the relevant time period because he retained the ability to perform light work with limitations and was capable of performing the jobs

---

[1] The claimant's insured status is a threshold issue in a DIB claim; a claimant is not entitled to DIB unless he establishes that he was disabled on or before the date he was last insured. *See Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) (citing *Ivy v. Sullivan*, 898 F.2d 1045,1048 (5th Cir. 1990) (acknowledging that the claimant bears the burden of establishing a disabling condition before the expiration of his insured status)); *see also* 42 U.S.C. §§ 416(i)(3), 423(c)(1).

[2] At the fifth step of the sequential evaluation, the burden is on the Commissioner to show that, considering the claimant's residual functional capacity, age, education, and past work experience, he can perform work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520 (2010); *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

of small products assembler, injection molding machine offbearer, and storage facility rental clerk. (Tr. 716-17).

C. *Brown's Arguments*

Brown presents two arguments. He contends (1) that the ALJ failed to carry his burden of showing that he can perform other work because he did not consider functional limitations that would have precluded him from performing the work the vocational expert identified and (2) that the ALJ failed to properly consider opinions from his physicians.

## II. Discussion

A. *Brown's First Argument*

Brown contends the ALJ found in his prior decision that he suffered from carpal tunnel syndrome and that he was limited to work that would require only occasional use of the hands. Brown complains that the ALJ acknowledged in the decision now at issue that he suffers from carpal tunnel syndrome but omitted the finding that he was limited to work involving only occasional use of his hands. Brown claims the omission is critical. The vocational expert testified that the jobs of small products assembler and injection molding machine offbearer, two of the jobs the ALJ determined Brown could perform, require frequent use of the hands. Brown argues that if the ALJ had found that he was limited to work involving only occasional use of his hands, as he did in his first decision, he would have been precluded from finding that Brown was capable of performing the two jobs. Brown further argues that collateral estoppel should apply in this case. Citing opinions from other circuits, he argues that collateral estoppel precludes reconsideration of administrative factual findings that have already been decided.

Brown's argument does not require remand. As the Commissioner points out, upon

3

remand for re-determination, the ALJ is not bound by prior findings. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (holding that the ALJ is not bound by prior findings when the Appeals Council remands a case for re-determination). In addition, the ALJ's RFC determination, which does not include limitations of only occasional use of the hands, is supported by substantial evidence. The physician who performed carpal tunnel release for Brown noted that Brown had good wrist and digit range of motion and normal lower arm strength. (Tr. 613). On May 25, 2001, Charles Reynolds, M.D., noted Brown's subjective complaint of numbness in his fingers and his report that he dropped things. (Tr. 232). Dr. Reynolds noted that Brown experienced diminished sensory ability and loss of motion in his hands, but he also noted that Brown handled objects "okay"; was capable of carrying 25 pounds and lifting 30 pounds; and was capable of buttoning his clothes and picking up pencils. (Tr. 235). In addition, Brown reported that during the relevant time period and thereafter he drove a stick shift truck; performed odd jobs and minor repairs on classic cars he collected; and engaged in various household chores such as washing dishes, sweeping the kitchen floor, and taking out trash. (Tr. 376-77, 408-09, 411, 413, 910-11).

Brown next claims the ALJ limited him to jobs that would allow him to sit or stand at his option and that the job of storage facility rental clerk requires a worker to show rental units to potential customers and during such times would not allow the worker to choose between sitting and standing at his option. The ALJ, however, did not incorporate a sit/stand option in the hypothetical question he posed to the vocational expert. After summarizing Brown's demographic characteristics, the ALJ asked the following question of the vocational expert: "Assume further that this individual is limited to light work, the individual could sit or stand but could not climb, crawl, kneel or squat, could occasionally stoop and crouch . . . ." (Tr. 913-14). The ALJ did not ask the

4

vocational expert to identify jobs that would allow Brown to sit and stand at his option.

It should be noted that the ALJ did, however, include a sit/stand option in his decision (Tr. 716). But this fact does not detract from the ALJ's ultimate conclusion of non-disability. Even if the ALJ had asked the vocational expert to identify jobs that would allow for a sit/stand option, such a limitation would not equate to a complete bar to walking within the workday. *See* SSR 83-12, 1983 WL 31253 at *4 (explaining the need to incorporate a limitation that would allow the claimant to alternate between sitting and standing and walking, especially in unskilled work). In addition, nothing in the record demonstrates that Brown is incapable of the demands associated with walking for the purpose of showing a potential customer a storage unit. Brown testified, indicated on application documents, and reported to physicians that during the relevant time period and in the time thereafter he visited friends at a coffee shop two to three times per week during the afternoons; occasionally shopped at flea markets with his wife and attended classic car shows; and visited a friend's shop during the afternoon. (Tr. 376-77, 408-09, 411, 413, 910-11). Brown reported to a physician that he walked everyday, though "not as much as [he] needed to," that he could walk 30 to 40 yards before he felt pain and needed to stretch or stand still, rather than sit, to relieve pain; and Dr. Reynolds noted that Brown was capable of walking 50 yards. (Tr. 235, 340). Finally, physicians found no muscle atrophy upon physical examination. (Tr. 144, 235, 416.)

Brown next argues that his blepharospasm would preclude him from working as a molding machine operator. Blepharospasm is a condition that causes involuntary spasmodic contractions in the muscles of the eye area. STEDMAN'S MEDICAL DICTIONARY 213 (27th ed. 2000). Brown testified that he did not stop working because of the condition; the evidence shows that the condition was effectively treated with Botox injections and Brown confirmed that fact in testimony;

5

and the types of activities Brown engaged in during the relevant time period negate a finding that the condition would preclude him from performing the jobs the vocational expert identified. (Tr. 239, 249, 258, 295, 406-07, 410, 910-11).

The court's role in reviewing a Social Security appeal is limited to determining whether the Commissioner applied the proper legal standards and whether the record contains substantial evidence to support the Commissioner's decision. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotations and citation omitted). Even in a case in which the evidence indicates a mixed record concerning a claimant's health problems and their limitations upon his ability to work, it is the ALJ's responsibility to weigh the evidence; the court is then charged with determining whether there is substantial evidence in the record as a whole to support the ALJ's determination. *Chambliss* v. *Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). In this case, evidence in the medical records and Brown's testimony substantially supports the ALJ's step five determination that Brown could perform jobs that exist in substantial numbers in the national economy. The burden of proof therefore returned to Brown to rebut the determination. *See Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citation omitted). Brown has not successfully rebutted the Commissioner's determination.

B.   *Brown's Second Argument*

Brown contends the ALJ failed to weigh various opinions from treating physicians under the regulatory factors listed in 20 C.F.R. § 404.1527(d). Brown points to an opinion from Naga Bushan, M.D. that Brown would not be able to perform jobs that involve flexing of his fingers

and wrists or repetitive bending of his back and an opinion from Howard Hurd, M.D. that, because of fatigue, Brown was capable of walking less than one hour per day. Dr. Bushan was not a treating physician, and he provided his opinion in 1996, which was outside the relevant time period of October 21, 2000, to December 31, 2001. (Tr. 365). In regard to Dr. Hurd's opinion that fatigue would preclude Brown from walking more than one hour per day, the ALJ considered the opinion under the regulatory factors. The factors under 20 C.F.R. § 404.1527(d) require the ALJ to consider: (1) the length of the treating relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) whether the physician provides medical evidence to support his opinion; (5) whether the opinion is consistent with the record as a whole; and (6) the specialization of the treating physician. *Newton v. Apfel*, 209 F.3d 448, 455-55 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)). The ALJ acknowledged Dr. Hurd's specialty in cardiology and the frequency of examination and the length of the treating relationship between the physician and Brown—Dr. Hurd examined Brown on three occasions. (Tr. 711; *see* Tr. 292). The ALJ determined that Dr. Hurd's opinion was inconsistent with objective clinical evidence related to Brown's exercise capacity; inconsistent with Dr. Hurd's own notes which indicated that Brown's fatigue had improved after his medication dosage was changed; and inconsistent with EKG readings. (Tr. 711). The ALJ considered Dr. Hurd's opinion under the regulatory factors. The District Court must reject Brown's claims to the contrary.

The District Court should also reject Brown's claims that the ALJ failed to properly consider opinions from Dr. Loggins. One of the opinions consists of a "to whom it may concern" letter and was rendered in 2005, several years after the relevant time period. (Tr. 638). In regard to the other opinion, which was rendered in 2002, the ALJ considered the opinion under the

7

regulatory factors. The ALJ acknowledged that Dr. Loggins, a general practice physician, was Brown's treating physician. (Tr. 713). He acknowledged in his discussion of the opinion, and in other sections of his decision, the frequency of examination and the course and the nature of the treatment Dr. Loggins provided Brown. (Tr. 712-13). For example, the ALJ noted that Dr. Loggins had never prescribed anything other than nonsteroidal anti-inflammatory pain medication during the course of his treatment of Brown. (Tr. 713). In addition, the ALJ determined that Dr. Loggins' opinion was unsupported. He noted that Dr. Loggins had not identified objective signs from examination that would support his opinions and that there was no evidence that Dr. Loggins had recorded any significant functional limitations during his examinations of Brown. *Id.* Finally, he determined that Dr. Loggins' findings were inconsistent with specific findings Dr. Reynolds recorded during his examination of Brown. *Id.* The ALJ, therefore, considered Dr. Loggins' opinion under the regulatory factors. Brown's argument is without merit.

### III. Conclusion and Recommendation

Based on the foregoing discussion of the issues, evidence, and the law this court recommends that the District Court affirm the Commissioner's decision and dismiss the complaint with prejudice.

### IV. Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is

found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    Dated:       December 29, 2010.

                                      NANCY M. KOENIG
                                      United States Magistrate Judge